UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS CUMMINGS and STEFFANI PENMAN, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>SALLIE MAE, INC.<br>　　　　　　　　Defendant. | Civil Action No. 1:12-CV-09984<br><br>Honorable Joan B. Gottschall<br><br>Magistrate Judge Geraldine Soat Brown |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Nicholas Cummings and Steffanie Penman (together, "Plaintiffs") and their undersigned counsel respectfully request that the Court grant this Motion for Preliminary Approval of Class Action Settlement with defendant Sallie Mae, Inc. ("Sallie Mae"), which does not oppose this motion. In support of this motion, Plaintiffs state as follows:

### I.　　INTRODUCTION

1.　　Plaintiffs, on behalf of themselves and all others similarly situated, filed this lawsuit alleging that, on or after September 15, 2010, Sallie Mae violated the Telephone Consumer Protection Act, 47 U.S.C. §227, ("TCPA"), by calling Plaintiffs and the class members on their cellular telephones through the use of an autodialer and/or prerecorded voice without their prior express consent. The parties have conducted discovery regarding these claims and, as part of that discovery, Sallie Mae identified approximately 251,000 individuals to whom Sallie Mae may have placed an automated telephone call to their cellular telephone numbers from September 15, 2010 through the present that may be subject to Plaintiffs' claims. Plaintiffs and Sallie Mae dispute whether (a) the putative class members consented to the subject calls; (b) the putative class members agreed to individually arbitrate their TCPA claims against Sallie Mae; and (c) whether this action is suitable for class certification.

2.　　To avoid the risk and cost of trial, Plaintiffs and Sallie Mae have agreed to the

settlement agreement attached hereto as Appendix 1 (the "Settlement Agreement"). The Settlement Agreement requires Sallie Mae to pay $9,250,000 into a settlement fund (the "Fund"), out of which class members who file valid and timely claims will receive a cash award in exchange for a release of all claims under the TCPA and state law that arise out of the calls at issue in this action.

3.     With this motion, Plaintiffs seek preliminary approval of the Settlement, and provisional certification of a Class for the purposes of providing the Class with notice of the Settlement and an opportunity to opt-out, object or otherwise be heard. The proposed Settlement is fair, reasonable and adequate and satisfies all criteria for preliminary settlement approval under Seventh Circuit law. For these reasons, and as set forth below, Plaintiffs respectfully request that the Court take the following initial steps in the settlement approval process: (a) preliminarily approve the proposed Settlement as fair, adequate and reasonable; (b) conditionally certify the Settlement Class; (c) appoint Nicholas Cummings and Steffani Penman as class representatives; (d) appoint Class Counsel; and (e) approve sending the proposed Class Notice.

## II.     BACKGROUND

### A.     The Claims At Issue In This Action

4.     Nicholas Cummings filed a Class Action Complaint against Sallie Mae on December 14, 2012, and Steffani Penman was added as a plaintiff in the First Amended Complaint on October 16, 2013. Doc. 1 & 64. Both complaints allege claims under the TCPA.

5.      Mr. Cummings' sister listed him as a reference on her application for a student loan and provided Mr. Cumming's telephone number. In 2012, Sallie Mae called Mr. Cummings on his cell phone using an automated dialer. Ms. Penman similarly received calls from Sallie Mae on her cellular telephone number. Plaintiffs contend that they did not provide consent for those calls.

### B.     Plaintiffs Investigated The Claims Of The Proposed Class.

6.     On January 2, 2013, this Court set a briefing schedule allowing Plaintiffs to conduct discovery to support the motion for class certification. Doc. 18. Thereafter, Plaintiffs

and Class Counsel investigated the facts underlying the claims asserted in the Action. Plaintiffs and Class Counsel propounded on Sallie Mae written discovery, including requests for admissions, interrogatories and two sets of requests for production of documents. As a result, Sallie Mae produced data and documents regarding Plaintiffs' claims and Sallie Mae's policies, practices and procedures concerning the use of its dialers, prerecorded messages and the number of persons that may have been called within the scope of this action (about 251,000). Class Counsel deposed Sallie Mae's corporate representatives and Sallie Mae deposed Mr. Cummings. In addition, Class Counsel engaged in numerous discussions with Sallie Mae's counsel regarding Plaintiffs' claims.

7. After conducting written discovery and depositions, Plaintiffs moved forward with the motion for class certification. Prior to Plaintiffs' filing their reply in support of the class certification motion, Class Counsel and Sallie Mae agreed to attend mediation with United States District Court Magistrate Judge Morton Denlow (Ret.) of JAMS on July 29, 2013. Prior to the mediation, the parties submitted detailed mediation briefs to Judge Denlow, setting forth their respective views on the strengths of their cases.

8. At the mediation, the parties discussed their respective views of the law and the facts and the potential relief for the proposed Class. After the full day, arms-length mediation and as a result of the substantial written and oral discovery, the parties reached a settlement.

C. **The Proposed Settlement.**

9. The settlement's details are contained in the Settlement Agreement. For purposes of preliminary approval, the following summarizes the Settlement Agreement's terms:

    a. <u>The Settlement Class</u>: The "Settlement Class" is defined in the Settlement Agreement as:
> The approximately 251,000 persons who Sallie Mae has identified in available records as possibly having been called for purposes of the Settlement. Sallie Mae denies that it or any other entity called these persons without consent.

Settlement Agreement § II.A.23 attached hereto as *Appendix 1*.

    b. <u>Benefits for Settlement Class Members</u>:  The Settlement Agreement requires Sallie Mae to establish a common fund in the amount of nine million two hundred fifty thousand dollars ($9,250,000).  Settlement Agreement § II.C.  There will be no reversion to Sallie Mae of any portion of the common fund and each class member who submits a claim form will receive a *pro rata* share of the Fund after "Settlement Costs" are deducted.  Settlement Agreement § III.C.  The Settlement Agreement defines "Settlement Costs" as (i) any award of attorneys' fees and costs to Class Counsel approved by the Court; (ii) any incentive awards to Plaintiffs approved by the Court; (iii) all costs of printing and providing notice to persons in the Settlement Class (including, but not limited to, Mail Notice, Publication Notice and Website Notice and any additional notice or telephone assistance that might be ordered by the Court); (iv) all costs of administering the Settlement, including, but not limited to, the cost of printing and mailing settlement payments and Claim Forms and the cost of maintaining a designated post office box for receiving Claim Forms; and (v) the fees, expenses and all other costs of the Claims Administrator.  Settlement Agreement § II.A.25.

 In order to obtain a Settlement Award, Settlement Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the settlement website or by mail.  Settlement Agreement § III.G., Ex. B.  Settlement Class Members will have 120 days following the Court's grant of Preliminary Approval to submit their claim forms.  Settlement Agreement §§ II.A.5, III.B.d.

 Settlement checks will be valid for 90 days from the date on the check.  Settlement Agreement § III.G.  If there are any uncashed checks after the 90 day period, there will be a second distribution provided that each eligible Settlement Class Member's *pro rata* share would be at least $10 after Settlement Costs.  Settlement Agreement § III.H.  If the *pro rata* share would be less than $10 after Settlement Costs or there are any uncashed checks after the second distribution, the parties will petition the court to award any such funds to an agreed upon *cy pres* recipient.  Settlement Agreement § III.H.

    c. <u>Class Release</u>:  In exchange for the benefits provided under the Settlement

-4-

LA 51704258

Agreement, Settlement Class Members will provide a release of the claims at issue in this action. Specifically, they will release any and all rights, duties, obligations, claims, actions, causes of action or liabilities "that arise out of or relate to the use of an "automatic telephone dialing system" and/or an "artificial or prerecorded voice" to make "calls" to a cellular telephone . . . used by or on behalf of the Sallie Mae Released Parties. . . to contact or attempt to contact Settlement Class Members . . .;" or "that arise out of or relate in any way to the administration of the Settlement." Settlement Agreement § III.P.1.

                d.      <u>Administration and Notice</u>: Plaintiffs and Sallie Mae will agree to a class action administrator, subject to approval by the Court (the "Claims Administrator"). The Claims Administrator will administer the claims resolution process, which include the following duties: (i) issuing Class Notice and claim forms; (ii) calculating and issuing settlement payments; (iii) responding to Settlement Class Members' inquiries regarding the claims administration process; and (iv) calculating and issuing settlement checks. Settlement Agreement §§ II.A.6, III.E.

Within sixty (60) days of entry of the Preliminary Approval Order (the "Notice Deadline"), the Claims Administrator will issue the Class Notice (Exhibits D and E of the Settlement Agreement) via mail or email to all Settlement Class Members for whom Sallie Mae possesses contact information. Settlement Agreement § III.F.1. Additionally, the Claims Administrator will publish a notice in a nationally distributed newspaper. Settlement Agreement § III.F.2. The publication notice will refer Settlement Class Members to the settlement website and provide a toll-free number for details regarding the Settlement. Settlement Agreement § III.F.2.

Additionally, the Claims Administrator will establish and maintain a settlement website. Settlement Agreement § III.F.3. The settlement website will contain a long form notice (Exhibit G to the Settlement Agreement) and post the mail notice, claim form, Settlement Agreement and the Preliminary Approval Order. Settlement Agreement § III.F.3. The website will also provide for online submission of the claim form. Settlement Agreement § III.F.3.

Once the Claims Administrator completes the notice plan, Settlement Class Members will have 120 days after Preliminary Approval to submit their claim forms. Settlement Agreement §§ II.A.5, III.B.d. Settlement Class Members will also have forty-five days from the Notice Deadline to submit a written request to be excluded from or object to the Settlement. Settlement Agreement §§ III.B.e, III.L-M. If the Court grants final approval of the Settlement, the Claims administrator will calculate the Settlement Awards and issue checks. Settlement Agreement § III.G.3

Plaintiffs and Class Counsel believe that the settlement of this action on the terms and conditions described above and set forth in the Settlement Agreement is fair, reasonable and adequate, and would be in the best interests of the putative class members.

### III.  ARGUMENT AND AUTHORITY

A.  **Class Action Settlement Approval Process.**

10. Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions §11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *3 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

11. As the Seventh Circuit recognizes, courts generally favor settlements of class actions:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, "'there is an overriding public interest in favor of settlement.'" Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir.1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

12. District court review of a class action settlement proposal is a two-step process. At the preliminary approval stage, the question for this Court is whether the settlement falls within the "range of possible approval," and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising Class Members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). Newburg, *supra*, at §11.41. If the district court preliminarily approves a class action settlement, it then proceeds to the second step in the review process, the fairness hearing. Manual for Complex Litigation (Fourth) §21.633 (2004).

13. In assessing the fairness, reasonableness and adequacy of a settlement, courts consider the following factors: (a) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (b) the defendants' ability to pay; (c) the complexity, length and expense of trial; (d) the presence of collusion in reaching a settlement; and (e) the stage of the proceedings and the amount of discovery completed. *Armstrong*, 616 F.2d at 314, (citations omitted); Synfuel Techs., Inc., 463 F.3d at 653; *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir.1979) (citations omitted); *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir.1996). Of these considerations, the first is most important. *Synfuel Techs., Inc.*, 463 F.3d at 653.

14. With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. Granting preliminary approval of this Settlement will allow all Class Members to receive notice of the proposed Settlement's terms and the date and time of the Final Approval Hearing, at which Settlement Class Members may voice their approval of or opposition to the Settlement, and at which the parties and Settlement Class Members may present further evidence and argument concerning the fairness, adequacy and reasonableness of the Settlement. Manual for

Complex Litigation (Fourth) §§ 13.14, 21.632 (2004).

B.    <u>**The Court Should Preliminary Approve The Settlement.**</u>

    1.    <u>**The Settlement Resulted From Extensive Arm's Length Negotiations And Is Not The Product Of Collusion.**</u>

15. As a leading treatise on class action jurisprudence explains, "…decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684, 9 Fed. R. Serv. 3d (LCP) 909 (7th Cir. 1987) (approved settlement upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. Newberg, §11.42.

16. As detailed above, the Settlement is the result of extensive, arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class actions. Counsel for both parties are also experienced in litigating TCPA claims and understand the legal and factual issues involved in this case. In the course of negotiating the Settlement, the parties exchanged detailed mediation briefs and engaged in a full-day mediation session before an experienced former federal judge.

17. Also as detailed above, Class Counsel thoroughly investigated and analyzed Plaintiffs' TCPA claims and conducted written and oral discovery to identify the class and prosecute the class claims. The discovery consisted of a contested discovery motion, written discovery requests, and depositions of Sallie Mae's corporate representatives pursuant to Rule 30b(6). Through this discovery, Class Counsel learned information regarding Sallie Mae's policies and procedures in making automated, prerecorded calls to cell phones and in obtaining and tracking consent to make such calls. Class Counsel also learned information regarding the number of telephones that Sallie Mae called and the number of calls made as they relate to the

-8-

claims in this case. As a result, Class Counsel were well-positioned to evaluate the strengths and weaknesses of their case, as well as the appropriate basis upon which to settle it.

> 2. **The Settlement Provides Significant Benefits For Settlement Class Members And Treats All Settlement Class Members Fairly.**

18. The Settlement provides relief for all Class Members to whom Sallie Mae may have made an automated call to their cell phone from September 15, 2010 through the date of preliminary approval. The Settlement requires Sallie Mae to pay $9,250,000 into the Fund, out of which Settlement Class Members who submit a valid and timely claim form will receive a cash award. The claim for money is simple and straightforward. Settlement Class Members need only fill out a simple one page form. The Fund is non-reversionary and Settlement Awards will be distributed on a *pro rata* basis after deducting Settlement Costs. If there are any uncashed checks, that money will be redistributed to Settlement Class Members or be distributed cy pres to charity.

> 3. **The Settlement Is Fair And Reasonable In Light Of The Alleged Claims And Defenses.**

19. While Plaintiffs and Class Counsel were confident in the strength of their case, they were aware of the risks inherent to litigation and the various defenses available to Sallie Mae, including the risk that the claims could not be resolved on a class-wide basis because the individual issues arguably eclipsed the common issues of the class and many putative class members agreed to individually arbitrate their claims. *Compare Meyer v. Portfolio Recovery Associates*, 696 F.3d 943 (9th Cir. 2012) (upholding certification of TCPA class) with *Jamison v. First Credit Servs.*, Inc., No. 12 C 4415, 2013 WL 1248306, at *15-17 (N.D. Ill. Mar. 28, 2013) (upholding denial of certification of TCPA class). In addition, Plaintiffs recognize that Sallie Mae has defenses on the merits. The risk that Settlement Class Members could end up recovering only a fraction of the settlement benefits, or nothing at all, was significant enough to convince Plaintiffs and Class Counsel that the settlement reached with Sallie Mae outweighs the

gamble of continued litigation.

C. **Provisional Certification Of The Settlement Class Is Appropriate.**

20. This Court has not yet certified this case as a class action. For settlement purposes, Plaintiffs respectfully request that the Court provisionally certify the Class defined in the Agreement, Section II.A.23. Sallie Mae does not oppose class certification solely for the purposes of the Settlement. For the reasons set forth below, provisional certification is appropriate under Rule 23(a) and (b)(3).

2. **Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.**

21. The settlement class is approximately 251,000 people throughout the United States. The Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F. 2d 1326, 1333 (7th Cir. 1969); *see also Newberg on Class Actions*, 3rd Ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

3. **Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.**

22. The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F. 2d 1013 (7th Cir. 1992). "Absolute commonality" is not required; commonality is satisfied if plaintiffs can demonstrate that a "common nucleus of operative fact" exists among the proposed class members. *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002). The commonality standard is "quite low." *Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 411 (N.D. Ill. 2006). A plaintiff may ordinarily satisfy the commonality requirement by

showing that there is "at least one question of law or fact common to the class." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). Class certification will not be defeated solely because there are some factual variations among the grievances of the class members. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998); *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir.1980).

23. The commonality requirement is satisfied here because there are questions of law and fact common to the Settlement Class that center on Sallie Mae's common practice of using an automated dialing system to call the Settlement Class. Numerous courts have held that the commonality requirement was satisfied in similar cases in which consumers alleged violations of the TCPA relating to calls to cellular telephones. *See Meyer v. Portfolio Recovery Associates, LLC*, 2012 WL 6720599 (9th Cir. Dec. 28, 2012) (preliminary certification for purposes of entering Fed.R.Civ.P. 23(b)(2) injunction; *Agne v. Papa John's Intern., Inc.*, --- F.R.D. ----, 2012 WL 5473719 (W.D. Wash. Nov. 9, 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 2010 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011), *Mitchem v. Illinois Collection Service*, 2009 C 7274, 2011 U.S. Dist. LEXIS 714 (N.D. Ill. Jan. 3, 2011). In fact, the Seventh Circuit has recently affirmed summary judgment on behalf of a class under a similar provision of the TCPA. *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. Ill. 2013).

**4. Rule 23(a)(3) - Named Plaintiffs' Claims are Typical Of the Claims Of The Settlement Class.**

24. The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F. 2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *Parker v. Risk Management Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002); *see also*, Fed.R.Civ.P. 23(a)(3). Commonality and typicality are often treated together because the analyses of each are often

-11-

interrelated. *See, e.g.*, *Parker*, 206 F.R.D. at 213; *see also*, *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 241 (N.D. Il. 2001) ("Typicality, the third requirement, is closely related to the question of commonality."). "Typicality is established when there is a 'sufficient relationship . . . between the injury to the named plaintiff and the conduct affecting the class,' and the claims of the named plaintiff and those of the class 'are based on the same legal theory.'" Newberg, §3.13.

25. For virtually the identical reasons discussed in the preceding section, this element is also met. In this case, Plaintiffs' TCPA claims, which are based on Sallie Mae's use of automated calls to Plaintiffs and all of the Settlement Class, are reasonably coextensive with those of the Settlement Class. Rule 23(a)(3) is plainly satisfied in this case.

### 5. Rule 23(a)(4) - Plaintiffs and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.

26. The determination that the "representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4), involve two considerations: (a) whether the Plaintiffs' attorneys are properly qualified and experienced to conduct the litigation; and (b) whether the Plaintiffs have any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

27. As set forth in the Declaration of Counsels (*Appendixes 3, 4 & 5*), Plaintiffs' counsel are experienced in consumer class actions, including class actions under the TCPA. In addition, Plaintiffs have no interests in conflict with the Class. Therefore, the named Plaintiffs and their counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### 6. The Settlement Class is Appropriate Pursuant to Rule 23(b)(3).

28. Class certification is appropriate under Rule 23(b)(3) where: (a) common questions of law or fact predominate over individual questions and where (b) a class action represents a superior method for the fair and efficient adjudication of the controversy. Because

the claims arise from a standard practice, common questions predominate. Because the claims are being certified for the purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is superior to individual lawsuits and promotes consistency and efficiency of adjudication.

29. For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

**D.** **The Proposed Notice Program Is Adequate.**

30. Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. Manual for Complex Litig. (Fourth) § 21.31 (2004). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

31. The Notices attached to the Settlement Agreement as Exhibits D through G are clear and straightforward, providing putative class members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information. The Notices contain all of the information required by Rule 23, such as the nature of the action; the class definition; a summary of the class claims and defenses; the process for submitting a claim form; the amount paid for a claim; the potential class representative fee and attorneys' fees and costs; the ability to enter an appearance; exclusion rights and deadlines; objection rights and deadlines; and the binding effect of a class judgment on members under Rule 23.

32. The Notice Plan is extensive and consists of both direct notice and publication. The direct notice plan provides individual notice to the best address the parties can obtain given the following procedures: (a) United States Mail for Settlement Class Members that Sallie Mae has a mailing address; (b) Email Notice to all Settlement Class Members for which Salle Mae does not have a mailing address, but has an email address; and (3) Reverse Lookup for instances

where Sallie Mae does not have an address associated with a telephone number it called, for example "wrong numbers." In addition to the direct notice, the publication notice will be placed in a national publication. Finally, the Claims Administrator will establish and maintain the Website Notice website on which will be posted the Mail Notice, Claim Form, a copy of the Settlement Agreement, the Preliminary Approval Order, and any other materials the Parties agree to include.

33. Therefore, the parties proposed notice plan is consistent with the due process requirements incorporated in Rule 23(c)(2)(B).

## IV. CONCLUSION

34. For all of the foregoing reasons, Plaintiffs respectfully submit that the Settlement Agreement and the settlement are sufficient to warrant notice thereof and a full hearing on the settlement.

35. The parties have agreed to a proposed preliminary approval order, attached to the Settlement Agreement as *Exhibit H* and again hereto as *Appendix 2*, which:

    a. Sets a date for a final approval hearing ("Final Approval Hearing");

    b. Preliminary certifies the Settlement Class;

    c. Approves sending the proposed Class Notice in the form that is attached to the Settlement Agreement;

    d. Sets deadlines for mailing of the Class Notice, the filing of objections, the submission of requests for exclusion from the Settlement Class, and the filing of papers in connection with the Final Approval Hearing;

    e. Pending final determination of whether the Settlement should be approved, bar all persons in the Settlement Class, directly, on a representative basis or in any other capacity, from commencing or prosecuting against any of the Sallie Mae Released Parties any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims; and

    f. Pending final determination of whether the Settlement should be

approved, stay all proceedings in the Action except those related to effectuation of the Settlement;

      WHEREFORE, Plaintiffs respectfully request that this Court enter an order in the form of *Appendix 2*, which contains the previously set deadlines.

                                       Respectfully submitted;

                                       /s/ Keith J. Keogh

Keith J. Keogh
Timothy Sostrin
Katherine Bowen
KEOGH LAW, LTD.
55 W. Monroe, Suite 3390
Chicago, IL 60603
(312) 726-1092/(312) 726-1093 (fax)
Keith@KeoghLaw.com

David J. Philipps
Mary E. Philipps
Philipps & Philipps, Ltd.
9760 S. Roberts Road, Suite One
Palos Hills, Illinois 60465
(708) 974-2900
davephilipps@aol.com

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

LA 51704258