**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS CUMMINGS and  STEFFANIE PENMAN, on behalf of themselves and others similarly situated, | ) ) ) ) | 1:12-cv-9984 |
| Plaintiffs, | ) ) | Judge Gottschall |
| v. | ) ) | |
| SALLIE MAE INC. | ) ) | |
| Defendant. | ) | JURY DEMAND |

**PLAINTIFFS' MEMORANDUM IN
SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs, Nicholas Cummings and Steffanie Penman, individually and as representatives of a Class of similarly situated persons, by Class counsel, respectfully submit the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement"). Attached hereto as *Appendix 1*.

**I.   INTRODUCTION**

On February 18, 2014, the Court granted preliminary approval of the Settlement. Doc. No. 73, 77. Thereafter and pursuant to the Court's order, direct individual notice of the Settlement was disseminated to approximately 82% of Class Members via email and mail.[1] Additional notice was given to Class Members through an advertisement published on February

---

[1] As set forth in the Declaration of Jenny Cudworth attached hereto as *Appendix 2*, defendant Sallie Mae, Inc., now known as Navient Solutions, Inc. ("Defendant") provided KCC with a class list. Using reverse searches, KCC was able to obtain contact information tied to 205,249 of those telephone numbers. Because multiple telephone numbers may correspond to each individual, Defendant estimates that the class list is approximately 251,000 individuals.

10, 2014 in USA Today, and through the Settlement Website. Class Members had until April 14, 2014 to opt out or object, and until April 18, 2014 to submit claims. Dkt. No. 77.

As amply demonstrated below, the Settlement easily meets the standard for final approval. The Settlement, including its terms and underlying negotiations, is fair, reasonable, and adequate. It was negotiated at arms'-length between Defendant, and experienced class counsel with the assistance of a skilled mediator, and therefore is presumptively fair, reasonable and adequate. Moreover, the Settlement benefits are substantial and resolves uncertain claims. The Settlement required that Defendant pay $9,250,000 into a non-reversionary settlement fund, out of which each of the class members who submit a claim form will receive a *pro rata* share after payment of settlement costs. Plaintiffs' counsel expects each claimant to receive $179.

In the motion for preliminary approval, Class Counsel noted that the settlement was a great result for the class. For example, Sallie Mae settled a prior TCPA case *Arthur v Sallie Mae*, *Inc.*, Case No. 2:10-cv-00198-JLR (W.D. Wash.). In that case, Sallie Mae paid more than $24 million to extinguish then-existing claims of 8 million class members. The total amount recovered per class member in this case is over twelve times more than the *Arthur* settlement.

The Class appears to agree with Class counsel's assessment. Not only has there been no objections to any portion of the settlement, the claim rate was exceptional. A typical claim rate in a TCPA class action is around 5% while here the claim rate is 15.4%. *See Appendix* 2 at paragraph 24. Therefore, Plaintiffs and Class Counsel request this Court grant final approval to the Agreement.

## II.  OVERVIEW OF THE LITIGATION AND MEDIATION

### A. The Litigation

Nicholas Cummings filed a Class Action Complaint against Defendant on December 14,

2012 alleging that Defendant placed calls to Plaintiffs and the class members on their cellular phones through the use of automatic telephone dialing systems and/or an artificial or prerecorded voice without their prior express consent, in violation of the TCPA. Doc. 1. Ms. Penman was added as a plaintiff in the First Amended Complaint on October 16, 2013. Doc. 64.

Defendant denies all of Plaintiffs' allegations and argues that it had express consent to make automated calls to Class Members on their cell phones. Defendant further maintains that many Class Members agreed to individually arbitrate these claims.

The TCPA makes it, "unlawful for any person within the United States … to make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…" 47 U.S.C. § 227(b)(1)(A)(iii). Congress found that automated or prerecorded calls are a nuisance and an invasion of privacy. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir.2012).

### B. Plaintiffs Thoroughly Investigated the Claims of the Proposed Class.

Prior to agreeing to settlement, Plaintiffs completed thorough and substantial discovery. Plaintiffs and Class Counsel propounded written discovery, including requests for admissions, interrogatories and two sets of requests for production of documents. As a result, Sallie Mae produced data and documents regarding Plaintiffs' claims and Sallie Mae's policies, practices, and procedures concerning the use of its dialers, prerecorded messages, and the number of persons that may have been called within the scope of this action (approximately 251,000). Class Counsel deposed Sallie Mae's corporate representatives and Sallie Mae deposed Mr. Cummings. In addition, Class Counsel engaged in numerous discussions with Sallie Mae's counsel regarding Plaintiffs' claims.

3

After written discovery and the depositions of Mr. Cumming and Sallie Mae's corporate representative, the parties moved forward with the motion for class certification. Prior to Plaintiffs' filing their reply in support of the class certification motion, Class Counsel and Sallie Mae agreed to attend mediation with United States District Court Magistrate Judge Morton Denlow (Ret.) of JAMS on July 29, 2013. Prior to the mediation, the parties submitted detailed mediation briefs, setting forth their respective views on the strengths of their cases. A settlement was reached in principal after mediation before Judge Denlow.

Through the mediated settlement negotiations and the investigation efforts, the parties reached an agreement in principle at the mediation. After extensive, additional negotiations, the parties resolved and executed the Settlement Agreement on December 11, 2013.

### III. THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT

#### A. The Preliminary Approval Order.

On December 13, 2012, this Court granted Preliminary Approval of the Class Settlement. Doc. 73. In the Preliminary Approval Order ("Order"), this Court found that the proposed terms of the settlement appeared to satisfy all of the elements of Federal Rules of Civil Procedures 23(a) and 23(b)(3). *Id*. The Order required the parties to provide the class members with notice, set deadlines and procedures for submission of claims, requests for exclusion, and objections to the settlement, and set May 2, 2014 for the final approval hearing[1].

---

[1] The order was subsequently amended on February 18, 2014 (Doc. 77), February 19, 2014 (Doc. 80) to allow additional time to send the notice and submit materials.

### B. The Sending of Class Notice

This Court is advised that subsequent to the entry of the preliminary approval order, 205,249 notices of settlement were sent with 196,780 sent via mail and 8,469 were sent via e-mail. *See Appendix 2* at paragraph 13.

The Notice Plan was extensive and consisted of both direct notice and publication. The direct notice plan provided individual notice to the best address the parties could obtain given the following procedures: (a) United States Mail for Settlement Class Members for whom Sallie Mae has a mailing address; (b) Email Notice to all Settlement Class Members for whom Salle Mae does not have a mailing address, but has an email address; and (3) Two rounds of reverse lookup for instances where Sallie Mae did not have an address associated with a telephone number it called, for example "wrong numbers." *Id*. In addition to the direct notice, the publication notice was placed in a national publication. *Id.* Finally, the Claims Administrator established and maintained a Website on which was posted the Mail Notice, Claim Form, a copy of the Settlement Agreement, the Preliminary Approval Order, and updated orders. The website also provided for on-line submission of claim forms for the convenience of the class. In addition, Defendant provided notice of the Settlement to the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

### IV. CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT

There were 31,589 claim forms filed. 29,436 of the claim forms are valid and eligible for payment[2]. *Id.* at 23. There were 43 request for exclusion with one of those received without a

---

[2] 1,646 claims were deficient, but have been mailed a deficiency letter asking for the proper information. 166 were denied as those claims did not provide a number on the class list. *Id*.

postmark on April 25, 2014. *Id*. at 21. A list of the class members who requested exclusion is attached as *Exhibit F* to the Declaration of Jenny Cudworth. There were no objections submitted by Class members. *Id.* at 22.

As noted above, no class member has objected to the terms of the settlement.

V. **THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT**.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). When faced with a motion for final approval of a class action settlement under Rule 23, a court's inquiry is limited to whether the settlement is "lawful, fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecommunc'ns, Inc.*, 309 F.3d 978, 986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

A. **The Standard For Granting Final Approval To The Class Action Settlement**

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997) the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rules 23(a) and 23(b) must have been met. *Id.* at 621. On December 13, 2013, this Court found that the class satisfied all the requirements of Rule 23(a) and Rule 23(b)(3) when it granted Plaintiffs' motion for preliminary approval. Doc. 73.

Once the Court has determined that the requirements of Rule 23(a) and Rule 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation*

*v. Lease Resolution Corp.*, 1128 F.3d 1074, 1082 (7th Cir. 1997).

There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions §11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *3 (N.D.Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F.Supp. 433, 438 (N.D. Ill. 1975).

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 375 (N.D. Ill. 2011) (citing *Isby*, 75 F.3d at 1199). "[T]he Court must not substitute its own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

To evaluate fairness, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the amount of opposition to the settlement by affected parties; (4) the opinion of competent counsel; and (5) the amount of discovery completed at the time of settlement. *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Applied to this case, the relevant criteria support final approval of the settlement.

  B. **All of the Factors Weigh In Favor Of Final Approval**

    1. **The Strength of the Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation.**

In a TCPA case, each class member would be entitled to $500 per call and up to $1,500 if

they can prove a willful violation of the Act and the Court determines that treble damages are warranted. While plaintiffs submit that they have a good claim, plaintiffs recognize that defendant has defenses to the claims including whether the Class members provided express consent to be called.

The Agreement provided that each class member who submitted a valid claim form would receive a pro rata share of $9,250,000 less Settlement Costs[3]. The expected recovery per claimant of $179 exceeds similar TCPA settlements. *See Arthur v. Sallie Mae, Inc.*, No. 10cv198-JLR, 2012 U.S. Dist. LEXIS 132413, 2012 WL 4075238, at *1 (W.D. Wa. Sept. 17, 2012) (class claimants to receive about $100 each); *Bellows v. NCO Fin. Sys.*, No. 07cv1413-W(AJB), 2008 U.S. Dist. LEXIS 103525, 2008 WL 5458986, at *7 (S.D. Cal. Dec. 10, 1008) (class claimants to receive $70); *Lo v. Oxnard European Motors, LLC*, No. 11cv1009-JLS(MDD), 2011 U.S. Dist. LEXIS 144490, 2011 WL 6300050, at 5 (S.D. Cal. Dec. 15, 2011) [*18] (class claimants anticipated to receive about $131); and *Lemieux v. Global Credit & Collection*, Case No. 08cv 1012-IEG(POR), Dkt. No. 46, 2011 U.S. Dist. LEXIS 158173 (S.D. Cal. Sept. 20, 2011) (class claimants to receive $70).

Although Plaintiffs and Class Counsel were confident in the strength of this case, there were risks inherent to litigation and the various defenses available to Sallie Mae, including the risk that the claims could not be resolved on a class-wide basis because the individual issues arguably eclipsed the common issues of the class and many putative class members agreed to individually arbitrate their claims. Compare *Meyer v. Portfolio Recovery Associates*, 696 F.3d 943 (9th Cir. 2012) (upholding certification of TCPA class) with *Jamison v. First Credit Servs.,*

---

[3] Settlement Costs include (i) attorneys' fees and costs to Class Counsel; (ii) any incentive awards to Plaintiffs approved by the Court; (iii) class notice and administration costs

*Inc.*, No. 12 C 4415, 2013 WL 1248306, at *15-17 (N.D. Ill. Mar. 28, 2013) (upholding denial of certification of TCPA class). In addition, Sallie Mae has asserted defenses to the merits.

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor.

The settlement satisfies the third *GE Capital* factor because only a small number of Class members have excluded themselves from the settlement and no Class member has objected to the settlement.

### 2. The Settlement Resulted From Extensive Arms-Length Negotiations.

As a leading treatise on class action jurisprudence explains, "…decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. *See also*, Section III(1)(A)(there is an initial presumption of fairness when a settlement has been negotiated at arms-length by experienced counsel.) The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. Newberg, §11.42.

Settlement was reached after Plaintiffs completed thorough and substantial discovery which involved (1) written discovery requests to Sallie Mae (2) a contested discovery motion (3) Sallie Mae's production of data and documents regarding Plaintiffs' claims and Sallie Mae's policies, practices, and procedures concerning the use of its dialers, prerecorded messages, and the number of persons that may have been called within the scope of this action (4) deposition of

9

Plaintiff Cummings (5) depositions of Sallie Mae's corporate representatives (6) JAMS mediation before United States District Court Magistrate Judge Morton Denlow (Ret.) and subsequent negotiations of the final terms, conditions and documentation.

Given the stage of proceedings, the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

C. **The Notice To Class Members Is Adequate.**

The Notice Plan was extensive and robust. It consisted of both direct notice and publication. The direct notice plan provided individual notice to the best address the parties could obtain given the following procedures: (a) United States Mail for Settlement Class Members for whom Sallie Mae has a mailing address; (b) Email Notice to all Settlement Class Members for whom Salle Mae does not have a mailing address, but has an email address; and (3) two rounds of reverse lookup for instances where Sallie Mae does not have an address associated with a telephone number it called, for example "wrong numbers." The parties used four different reverse look up vendors to determine as many addresses as possible for the class members. In addition to the direct notice, the publication notice was placed in a national publication. *Id.* Finally, the Claims Administrator established and maintained the Website Notice website on which the Mail Notice, Claim Form, a copy of the Settlement Agreement, the Preliminary Approval Order, and updated orders were posted. The website also provided for on-line submission of claim forms.

Under Federal Rule of Civil Procedure 23(c)(3), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. Manual for Complex Litig. (Fourth) §21.31 (2004). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

The Notice sent to the Class members was clear and straightforward, providing putative class members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information. *See Appendix 1 at Exhibit E.* The Notice contained all of the information required by Rule 23, such as: (the nature of the action; the class definition; summary of the class claims and defenses; the amount paid for a claim; the potential class representative fee and attorneys' fees and costs; ability to enter an appearance; exclusion rights; objection rights and binding effect of class judgment on members under Rule 23.)

In order to obtain a Settlement Award, Settlement Class Members only had to complete a simple, one-page claim form and provide it to the Claims Administrator via the settlement website or by mail pursuant to Settlement Agreement § III.G., Ex. B.

The high rate of claims illustrates the notice was highly effective and that the notice scheme fully complied with the due process requirements incorporated in Rule 23(c)(2)(B). Rule 23's advisory committee note states that the "mandatory notice pursuant to subdivision (c)(2) … is designed to fulfill requirements of due process to which the class action procedure is of course subject." Fed.R.Civ.P. 23(d)(2) advisory committee's note (*citing, Mullane*, 339 U.S. 306 (additional citations omitted).

## VI.    **<u>FINAL APPROVAL ORDER</u>**

The parties have agreed to the form of the Final Approval Order, which was previously submitted to this Court with the Settlement Agreement. A copy of the proposed final order is also attached hereto as *Appendix 3*. The release that is incorporated into the Final Approval

Order is narrowly limited to claims "that arise out of or relate to the use of an "automatic telephone dialing system" and/or an "artificial or prerecorded voice" to make "calls" to a cellular telephone" *Id.*

## VII. THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.

Pursuant to the Agreement, Class Counsel requests approval of one third of the settlement fund inclusive of costs.

### A. Class Counsel's Requested Fee Is Reasonable

Plaintiffs' counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter. The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the percentage of fund method. *In re Synthroid Mktg. Litig.*, 264 F. 3d 712 (7th Cir. 2001).

#### a. One-Third of the Common Fund Is in Line with Fees in Similar Cases

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Gaskill v. Gordon*, 160 F. 3d 361, 362 (7th Cir. 1998); *Florin v. Nationsbank , N.A.*, 34 F. 3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.*, 962 F. 2d 566, 572 (7th Cir. 1992) ("*Cont'l I*"); *In re Cont'l Ill. Sec. Litig.*, 985 F. 2d 867, 868 (7th Cir. 1993) ("*Cont'l II*"); *Kendrick v. Atcor, Inc.*, 1988 U.S. Dist. LEXIS 8389 (N.D. Ill. 1988).

In *Taubenfeld v. Aon Corp.*, the Seventh Circuit provided guidance for the award of attorney's fees in a securities class action:

> [W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." Although it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions.

415 F. 3d 597, 600 (7th Cir. 2005) (citation omitted).

This District has noted that "the Seventh Circuit strongly endorsed the percentage method of computing appropriate fee awards in class action common fund cases." *See Goldsmith v. Tech. Solutions Co.,* 1995 U.S. Dist. LEXIS 15093, *24 (N.D. Ill. 1995) (other citations omitted) (approving 33.33% fee award), *citing Cont 'l Ill. II,* 985 F. 2d 867. "'[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class,' particularly where that percentage of the benefit approach replicates the market." *Cooper v. IBM Pers. Pension Plan,* No. 99-829, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005). The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).

In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F. 3d 283, 333 (3d Cir. 1998). If this case were an individual case, the customary fee arrangement would be contingent, on the percentage basis, and in the range of 33

1/3% to 40% of the recovery, especially since the TCPA is not fee shifting. *See Kirchoff* at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Limited Partnership v. Price Waterhouse, LLP,* 2001 WL 1568856 at *4 (N.D. Ill 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding class counsel the requested one-third of the common fund); *Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40–41 (N.D. Ill. Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed upon vary, with one-third being particularly common.").

This District has also recognized that a fee award of "33 1/3% is in fact in line with that which has, in previous cases, been approved," and "[t]hirty three percent appears to be in line with what attorneys are able to command on the open market in arm's length negotiations with their clients." *Id.* at 26–27. Notably, the Northern District has recognized the appropriateness of a fee of nearly 1/3 of the common fund in class litigation and the historic approval of such fees in the Seventh Circuit. See *also Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856, *10 (N.D. Ill. 2001) (33 1/3 % awarded) (Judge Darrah); *In re Lithotripsy Antitrust Litig.,* 2000 U.S.Dist. LEXIS 8143, **6-7 (N.D. Ill. June 12, 2000) (Judge Guzman) ("33.3% of the fund plus expenses is well within the generally accepted range of the attorneys' fee awards in class-action anti-trust lawsuits."); *In re Spyglass, Inc. Sec. Litig.,* No. 99-c-0512 (N.D. Ill. March 24, 2000) and *In re Spyglass, Inc. Sec. Litig.,* No. 99-cv-0512 (N.D. Ill. May 31, 2000) (Judge Guzman) (33% fee award approved); *Rehm v. Eagle Fin. Corp.¸* 1998 U.S. Dist. LEXIS 20015, *1-2 (N.D. Ill. Dec. 8, 1998) (Judge Guzman) (approving 33.3% fee request), *aff'd Rehm v. Eagle Fin.*

14

*Corp.,* No. 96-2455 (N.D. Ill. Dec. 8, 1998) (Judge Moran) ("the 7th Circuit Court of Appeals, as well as the majority of other circuit courts have approved the use of the percentage of the fund method to award attorneys' fees in class action/common fund cases"); *Taubenfeld*, 415 F.3d at 598 (7th Cir. 2005) (Judge Kanne) (affirming fee award of 33.3%); *Gaskill*, 942 F. Supp. 382, 388 (N.D. Ill. 1996) (Judge Williams) *aff'd* 160 F. 3d 361, 364 (7th Cir. 1998) (Judge Posner) (38% awarded); *In Re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, Case No. 05 CV 07097 (N.D. Ill. 2010) (Judge Aspen) (Awarded $7.33 million for attorney fees, which is 33% of the common fund); *See also Appendix 4*, Chart of Securities Class Actions awarding fees of 33.3% of the Settlement Fund.

It is important to note that the TCPA is not fee shifting, which supports the application of approving fees based on one third of the common fund. The requested fee is also in line with similar fees awarded by district courts in TCPA class actions, including this Court. *Saf-T-Gard v Vanguard Energy Services, LLC., 12* C 3671 (N.D. Ill 2014) (this Court) (Awarding 33% of the common fund at Doc. 65); *Hanley v Fifth Third Bank,* 12 C 1612 (N.D. Ill) (Judge Castillo) (Awarding 33% of the common fund); *Saf-T-Gard v Seiko,* 09 C 776 (N.D. Ill. 2011) (Judge Bucklo) (Awarding 33% of the common fund); *Hinman v. M and M Rental Center* Inc., 06-cv-01156, Doc. 225(N.D. Ill. 2008) (Awarded 33% of the common fund plus costs); *CE Design, Ltd. v. Cy's Crabhouse,* 07 C 5456 (N.D. Ill. Sept. 22, 2010) (Judge Kennelly) (Awarded 33% of the common fund plus costs. Doc. 373); *Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Judge Nordberg) (Awarded 33% of the common fund plus costs. Doc. 33);*CE Design, Ltd. v.*

*Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Judge Darrah) (Awarded 33% of the common fund plus costs. Doc. 32-2)[4].

In this case, one third of the Settlement Fund, which includes expenses, is the appropriate method to "recreate the market" given the nature and scope of the Litigation, the time spent, and expenses incurred in its prosecution and the substantial result achieved for the Class.

Once again, there is no portion of the settlement fund will revert to Sallie Mae. Instead every penny of the fund will be used for the benefit of the class.

**No Class Member Objected to the Attorneys' Fees and Expenses Requested**

The notice specified that Class Counsel would request one third of the entire fund. As noted above, no objections to counsel fees and costs were filed. Doc 83 and 84. The lack of objection to the requested attorney fees further supports the appropriateness of the fees. Based on the foregoing, the Court should grant Class Plaintiff's request for attorneys' fees (inclusive of expenses) in the amount $3,052,500.00.

### VIII. THE COURT SHOULD ALSO APPROVE THE REQUESTED SERVICE AWARD

Class Counsel also requests that the Court approve service awards in the amount $5,000 to Nicholas Cummings and $2,500 to Steffani Penman for their services as Class Representatives.

---

[4] Other jurisdictions are in accord in TCPA settlements. L*ocklear Electric, Inc. v. Norma L. Lay*, 09 C 0531 (S.D. Ill.) (Reagan, J.) (Awarded 33% of the common fund plus costs. Doc. 67) *Accounting Outsourcing, LLC. v Verizon Wireless,* 2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) (Awarded $2,314, 328, which is in excess of 35% of the common fund, plus costs); *Nicholson v Hooters of Augusta, Inc.*, 95-RCCV-616 (Richmond County, Ga. April 25, 2001) (Awarded $3,931,035.62, which was 33% of the common fund plus costs).

The Notice informed the Class of this request and no objections to the proposed service awards were received. Courts have approved service awards on the basis that Named Plaintiffs in class actions take risks and perform services for the benefit of the Class. *See* Albert Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.). Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." *In re Cont'l I*, 962 F. 2d 571. Since *In re Cont'l I*, service awards for named plaintiffs in class actions have been regularly granted and upheld in this Circuit. *See Cook,* 142 F. 3d 1016 (7th Cir. 1998); *Saf-T-Gard v Seiko,* 09 C 776 (N.D. *Saf-T-Gard v Seiko,* 09 C 776 (N.D. Ill. 2011) (Judge Bucklo) ($12,500 to named plaintiff in TCPA class); *In Re Ameriquest Mortgage Co.* at ¶12. (Awarded service payments of $7,500 to each of the 87 named plaintiffs.); *Gibson & Company Insurance Brokers, Inc. v. QFA Royalties LLC.*, 06-cv-05849-PSG-PLA Document 212 (C.D. Ca. 2009) ($15,000 to the named plaintiff for service payment in TCPA class settlement)*; Nicholson v Hooters of Augusta, Inc.*, 95-RCCV-616 (Richmond County, Ga. April 25, 2001) ($15,000 to the named plaintiff in a TCPA class action for service payment).

In fact the Seventh Circuit was recently critical of a $7,500 incentive award in a TCPA case as being too small. In *Ira Holtzman , C.P.A, & Associates Ltd. v Turza,* 11-3188 (7th Cir. August 26, 2013) the court described that award as a disincentive award. p.14.

Plaintiffs invested time and energy working with counsel, responded to substantial discovery, Mr. Cummings was deposed, and both carried to their potential detriment and the benefit of the Class the substantial risk of nonrecovery. For their willingness to represent the

Class and aid in the prosecution of this matter and for its ultimately fruitful efforts, on behalf of the Class, plaintiffs have earned the requested service award.

## IX     CONCLUSION

For all the reasons set forth above, Plaintiffs individually, and as representative of the Class, by Class Counsel, request that this Honorable Court grant final approval of the Agreement and enter the proposed final approval order attached hereto as *Appendix 3*.

Respectfully submitted;

/s/ Keith J. Keogh

| | | |
|---|---|---|
| Keith J. Keogh<br>Timothy Sostrin<br>Katherine Bowen<br>KEOGH LAW, LTD.<br>55 W. Monroe, Suite 3390<br>Chicago, IL 60603<br>(312) 726-1092/(312) 726-1093 (fax)<br>Keith@KeoghLaw.com | David J. Philipps<br>Mary E. Philipps<br>Philipps & Philipps, Ltd.<br>9760 S. Roberts Road, Suite One<br>Palos Hills, Illinois 60465<br>(708) 974-2900<br>davephilipps@aol.com | Alexander H. Burke<br>BURKE LAW OFFICES, LLC<br>155 N. Michigan Ave., Ste 9020<br>Chicago, IL 60601<br>(312) 729-5288<br>(312) 729-5289 (fax)<br>ABurke@Burkelawllc.com |